| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Stephen R. Wade, Bar # 79219<br>Law Offices of Stephen R. Wade<br>405 N. Indian Hill Blvd<br>Claremont, California 91711<br>phone: (909) 985-6500<br>email: srw@srwadelaw.com | |

☐ *Individual appearing without attorney*
☒ *Attorney for:* Debtor

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION ▼

| In re:<br><br>MENACHEM LAND, LLC, a California<br>limited liability company | CASE NO.: 2:22-BK-14634-VZ<br><br>CHAPTER: 11 ▼ |
|---|---|
| | **NOTICE OF MOTION FOR:**<br>ORDER APPROVING THE SALE OF ASSETS OF THE ESTATE (11 U.S.C. 363(b) and (m)); ORDER WAIVING THE 14 DAY STAYS OF FRBP 6004(H) and 6004(D); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JANE UN IN SUPPORT THEREOF<br><br>*(Specify name of Motion)* |
| Debtor(s). | DATE: 12/06/2022<br>TIME: 11:00 am<br>COURTROOM: 1368<br>PLACE: Roybal Federal Building<br>255 E. Temple Street<br>Los Angeles, California 90012 |

1. TO *(specify name)*: <u>THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, AND TO ALL INTERESTED PARTIES</u>

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                          Page 1                          **F 9013-1.1.HEARING.NOTICE**

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  11/10/2022

LAW OFFICES OF STEPHEN R. WADE
Printed name of law firm

Signature

Stephen R. Wade
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                   Page 2                          **F 9013-1.1.HEARING.NOTICE**

LAW OFFICES OF STEPHEN R. WADE
405 N. Indian Hill Boulevard
Claremont, CA 91711
PHONE (909) 985-6500
email srw@srwadelaw.com
Stephen R. Wade
California Bar # 79219

ATTORNEY FOR DEBTOR

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MENACHEM LAND, LLC, a California limited liability company<br><br>Debtor. | CASE NO. 2:22-BK-14634-VZ<br><br>**CHAPTER 11**<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER:**<br><br>**(1) APPROVING THE SALE OF ASSETS OF THE ESTATE (11 U.S.C. 363 (b) and (m))**<br><br>**(2) WAIVING THE 14 DAY STAYS OF FRBP 6004(H) AND 6004(D)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JANE UN IN SUPPORT THEREOF**<br><br>Date:       December 6, 2022<br>Time:       11:00 a.m.<br>Courtroom: 1368<br>                 Roybal Federal Building<br>                 255 E. Temple Street<br>                 Los Angeles, CA 90012 |

**PLEASE TAKE NOTICE** that, pursuant to Local Bankruptcy Rule 6004-1 a hearing will be held at the above referenced date, time and location to consider this motion ("Motion") by Menachem Land, LLC, a California limited liability company, Debtor and Debtor in Possession ("Menachem Land" or "Debtor"), for the entry of an Order approving the sale of the Debtor's interests in the vacant real property consisting of approximately 590 acres of land located in Riverside County and San Bernardino

NOTICE OF MOTION AND MOTION TO SELL REAL PROPERTY; DECLARATION OF JANE UN AND; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Menacehm Land, LLC

1

1    County California and more particularly described in Exhibit "A" to the Declaration of Jane Un filed

2    herewith, (the "Subject Property"). The sale of the Subject Property includes the sale of certain other

3    property owned by MJM Ventures, Inc., formerly debtor and debtor in possession in pending Chapter

4    11 Case No. 2:22-bk-14634-SK, converted to Chapter 7 by Order entered on October 31, 2022. (The

5    "MJM Ventures Property"). In order to proceed with the proposed sale, the sale of the MJM Ventures

6    Property must be the subject of a separate motion to sell by the Chapter 7 Trustee, Rosendo Gonzalez,

7    in the MJM Ventures Bankruptcy case. The proposed sale also includes certain property owned by a third

8    party, Worldyao Resort, ("Worldyao Resort"). Worldyao Resort is not a debtor in any pending

9    bankruptcy proceeding.

10        This Motion is made with respect to the Notice of Motion, Motion, Declaration of Jane Un, and

11    the Memorandum of Points and Authorities filed in support hereof.

12        **PLEASE TAKE FURTHER NOTICE** that the Debtor intends to sell the Subject Property to

13    the Buyer, Richtop  Property Management Corporation, dba R.P.M. ("RPM" or "Purchaser") with

14    respect to the terms and condition of the Vacant Land Purchase Agreement executed on October 15,

15    2022, and the 1st Addendum  thereto executed on October 15, 2022, a copy of which is attached to the

16    Declaration of Jane Un as Exhibit "A" filed in support hereof and pursuant to 11 U.S.C. Section 362(b),

17    and (m). (The "Sale") the terms of the sale include:

18        A.    Combined Purchase Price          $4,263,000

19        B.    Overbid                          The Sale is NOT subject to Overbid

20        C.    Real Estate Commissions          The Sale is not subject to a broker's commission

21                                              or finders fee of any kind payable by the Seller.

22                                              The Buyer will pay a broker's commission of one

23                                              percent (1%) of the Purchase Price.

24        D.    Representations & Warranties     The Sale is without Warranty of Condition and in

25                                              an "AS IS" condition and the Debtor is not

26                                              responsible for any modifications prior to close.

27

28

E.      Condition of Title at Close          Title to the Subject Property is be conveyed by Grant Deed free and clear of any liens or encumbrances except as accepted by the Buyer at close or easements of record thereon.

**PLEASE TAKE FURTHER NOTICE** that the sale of the Subject Property will provide sufficient funds to pay all secured creditors including those secured by deeds of trust or other liens of record and including real property taxes, in full at close.

**PLEASE TAKE FURTHER NOTICE** that this sum will be sufficient to provide funds to the Estate sufficient to pay all secured, administrative, priority and unsecured claims in the case and will form the basis for either a motion to dismiss this case or, in the alternative, the Debtor's Plan of Reorganization, which will be filed on or before December 15, 2022 in accordance with the representations of the Debtor to this Court at the Initial Status Conference.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the Court waive the 14-day stay as set forth in Bankruptcy Rules 6004(h) (concerning the Sale of Property).

**PLEASE TAKE FURTHER NOTICE** that for all these reasons, the Debtor believe this sale is in the best interests of the creditors and of this estate. In fact, it is essential to preserving the assets of the estate and providing a basis for reorganization in Chapter 11.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f) provides each interested party opposing or responding to the Motion must file and serve the response on the Debtor and the Office of the United States Trustee not later than 14 days before the date designated for hearing on the Motion. **ANY FAILURE TO TIMELY FILE OPPOSITION MAY BE CONSTRUED BY THE COURT AS CONSENT TO THE RELIEF REQUESTED IN THE MOTION.**

Dated: November 10, 2022          THE LAW OFFICES OF STEPHEN R. WADE

By: _____
          Stephen R. Wade
          Attorneys for Debtor and Debtor in Possession

---

1

2

### DECLARATION OF JANE UN

3

4

I, Jane Un, hereby declare that:

5

    1.    I am the Manager of the Debtor in this Chapter 11 case Menachem Land LLC, a Delaware

6

limited liability company in good standing in the State of California. ("Menachem Land"). I make this

7

declaration based upon personal knowledge of the matters contained herein and if called upon to testify

8

I can competently testify to each such matter based up such personal knowledge.

9

10

    2.    The equity members of Menachem Land are as follows:

11

        a.    Jane Un        2%

12

13

        b.    Atilla Gahbro as
            Trustee of Trust AIG    48%

14

        c.    Atilla Gahbro as
            Trustee of Trust AIG II    50%

15

16

    The beneficiaries of Trust AIG is Zoe Ella the beneficiary of and Trust AIG II is Matthew

17

Macdonald. Jane Un and Atilla Ghabro are brother and sister and Zoe Ella is the daughter of Atilla

18

Ghabro and Matthew MacDonald is the son of Jane Un.

19

    3.    This case was initiated through the filing of a voluntary petition under chapter 11 on

20

August 24, 2022.  Menachem Land is a Debtor in Possession and no trustee has been appointed in this

21

22

case.

23

    4.    Menachem Land is the owner of fee title to certain real property located in the Counties

24

of Riverside and San Bernardino Counties consisting of five (5) lots of vacant land in San Bernardino

25

County and thirteen (11) lots in Riverside County. (hereinafter the "Subject Property") The Subject

26

Property bears the Assessor's Parcel Number designations as follows:

27

28

| | | |
|---|---|---|
| Riverside County | APN #'s | 471-110-012; 471-110–13; 471-110-015; 471-110-018; 471-130-001; 471-130-002; 471-140-001; 471-140-002; 471-140-005; 471-140-007 |
| San Bernardino County | APN's | 0294-061-19 (50% interest); 0294-071-03; 0294-081-55; 0294-081-56; 0294-081-57 0294-071-04 |

4.      Menachem Land, together with certain adjacent property owned by MJM Ventures, Inc., ("MJM Ventures") has been working since 2018 to obtain development approvals ("Entitlements") from Riverside and San Bernardino Counties for the development of the Subject Property, MJM Ventures is a debtor in a pending Chapter 11 proceeding in the Bankruptcy Court for the Central District of California, Case No. 2:22-bk-14866-SK. (The "MJM Ventures Bankruptcy"). The MJM Ventures Bankruptcy was converted to a Chapter 7 on October 31, 2022, and Rosendo Gonzalez is the duly appointed Chapter 7 Trustee in that case.

5.      The Jane Un is the President of MJM Ventures. The shares of MJM Ventures are held as follows:

| | | |
|---|---|---|
| a. | Atilla Gahbro | 14% |
| b. | Atilla Gahbro Trustee Of Trust 24 | 18% |
| c. | Atilla Gahbro Trustee Of Trust No. 28 | 18% |
| d. | Atilla Ghabro Trustee of Trust No 19 | 50% |

The beneficiary of Trust 24 is Zoe Ella

The beneficiary of Trust 28 is Atilla Gahbro

The beneficiary of Trust 19 is Matthew MacDonald

6.    MJM Ventures is the owner of certain real property located in the County of San Bernardino consisting of four (4) lots of vacant land in San Bernardino County. (hereinafter the "MJM Ventures Property") The MJM Ventures Property bears the Assessor's Parcel Number designations as follows:

0294-081-58; 0294-081-59; 0294-081-14; 0294-071-02

7.    In May, 2004 MJM Ventures sold that property to Pacific First Redlands, LLC. ("PFR"). In that transaction, MJM Ventures took back a note secured by a deed of trust on the property which was all due and payable in 2008. When PFR failed to make payment MJM Ventures commenced foreclosure on the property under the private power of sale under the deed of trust. In response, PFT filed a series of bankruptcies in the Bankruptcy Court for the Central District of California as follows:

|     | Filing Date | Chapter | Case No. | Case Closed |
|-----|-------------|---------|----------|-------------|
| a.  | 5/15/08     | 11      | 1:08-bk-13170 | 10/17/09 |
| b.  | 5/14/10     | 11      | 1:10-bk-15764 | 7/19/10  |
| c.  | 5/13/11     | 11      | 1:11-bk-15947 | 9/1/11   |
| d.  | 5/14/12     | 11/7    | 1:12-bk-14466 | 12/19/12 |

8.    Throughout this entire process, MJM Ventures attempted to complete its foreclosure only to be thwarted over five (5) years by the multiple filings by PFR. Finally, MJM Ventures was successful in completing foreclosure and taking title under a Trustee's Deed in May 2013. By that time, however, due to the failure of PFR to make payment(s) of accruing property taxes to the County of Riverside, California from its acquisition in 2004 to the completion of the foreclosure sale in 2013 there were property taxes owed of almost $1,300,000. Faced with a loss of the property to a tax sale after

1    retaking title, MJM Ventures filed its own Chapter 11 case on May 13, 2013 Case No. 6:13-bk-19602.

2    (The "First MJM Ventures Bankruptcy")

3        9.    In the First MJM Ventures Bankruptcy, it successfully confirmed a Plan of

4    Reorganization under which it repaid the delinquent real property taxes to the County of San Bernardino

5    in full within five (5) years, with interest at eighteen percent (18%) per annum in annual payments. The

6

7    last payment was made in 2018 and the case was closed in October, 2018.

8        10.    In 2015 and 2016 in order to pay delinquent real property taxes to the County of San

9    Bernardino, the Debtor and MJM obtained three (3) loans secured by deeds of trust on the Menachem

10   Land Property and the MJM Ventures Properties from Linkage Financial Group, LLC. ("Linkage

11

12   Financial") The initial loan from Linkage Financial was to MJM Ventures and evidenced by a Note dated

13   as of June 30, 2015 in the original principal sum of $420,000 both secured by deeds of trust on the MJM

14   Ventures in San Bernardino County. (The "$420,000 Linkage Financial Deed of Trust").

15

16       11.    A second loan from Linkage Financial was to Menachem Land and is evidenced by a

17   Note dated January 26, 2016 in the original principal sum of $470,000 secured by deeds of trust on the

18   Subject Property both in Riverside and San Bernardino Counties. (The "470,000 Linkage Financial

19   Deeds of Trust").

20       12.    The third loan from Linkage Financial was to MJM Ventures and in the original principal

21

22   sum of $356,000 and evidenced by a Note dated April 28, 2016 secured by deeds of trust on the MJM

23   Property in San Bernardino, junior to the $420,000 Linkage Financial Deed of Trust. (The "356,000

24   Linkage Financial Deed of Trust")

25       13.    Additionally, in order to procure funds to pay the real property taxes to the County of San

26   Bernardino, a related third party, Abba Bail Bonds, Inc., obtained a loan from Linkage Financial in the

27

28

original principal sum of $400,000 evidenced by a Note in that amount dated April 27, 2015 (the "Abba Note") and secured by real property in the County of San Bernardino commonly known as 3001 S. La Cadera Drive, Colton, CA 92324 (the "$400,000 Abba Deed of Trust") Abba Bail Bonds, Inc., is wholly owned by Jane Un. The funding of the loan from the Abba Note was paid directly to the County of San Bernardino for application on outstanding property taxes to the County of San Bernardino and no portion was retained by Abba Bail Bonds, Jane Un or any other person.

14.    On or about August 19, 2019, in order to continue the development process, Menachem Land obtained a loan in the original principal sum of $123,000 from Worldyao Resort. ("Worldyao Resort").  Worldyao Resort is a a California corporation consisting of a group of foreign investors formed in 2019 to invest in the development of the Subject Property and the MJM Property. Jane Un is the President of Worldyao Resort, but the shares are held by unrelated parties.

15.    To secure that obligation, Menachem Land gave a deed of trust dated August 19, 2019 and recorded on January 31, 2020 as Document No.2020-0037251 in the County Recorder of the County of San Bernardino on the portion of the Subject Property located in San Bernardino County, to Worldyao Resort as beneficiary  securing that obligation. (The "Worldyao Resort $123,000 Deed of Trust")

16.    In addition, in September, 2019 and January 2020, Menachem sold several parcels of its land to Worldyao Resort for the total sum of $225,000 and gave grant deeds as follows:

a.    A Grant Deed dated September 19, 2019 to the real property located in Riverside County and identified as APN #'s 471-110-010; 471-110-011; 471-110-020; and,

b.    A Grant Deed dated January 3, 2020 to a an undivided fifty percent (50%) interest in the real property located in San Bernardino County and identified as APN # 0294-061-19

(Collectively the "Worldyao Resort Properties")

17.    The amount currently due and owing to Worldyao Resort on the parcels secured by the World Yao Resort Deed of Trust in the amount of $161,950. World Yao Resort MJM Land and Menachem Land have agreed that the relative value of the Worldyao Resort and which is the subject of the Sale is in the amount of $225,000. Worldyao Resort, MJM Ventures and Menacham Land have agreed that at close of escrow on the Sale, World Yao Resort will receive the total sum of $386,950 representing payment of the amount(s) owed to World Yao Resort under Worldyao Deed of Trust and for reconveyance of Worldyao Resort' interest in the APN #'s 471-110-010; 471-110-011 and 471-110-020 in Riverside County as well as the 50% interest in APN #0294-061-19 located in San Bernardino County which were deeded to World Yao Resort as set forth in paragraph 12.

18.    The Loans from Linkage Financial matured in 2016 and 2017, and were extended. Almost immediately thereafter, in December, 2018, Southern California Edison brought an eminent domain action in San Bernardino County Superior Court, Case No. CIVDS 1725592 seeking to condemn a portion of the property for transmission line dedication which halted development.

19.    Due to these circumstances, together with delays in approvals which accompanied the shut down in processing of entitlements in Riverside and San Bernardino Counties due to the COVID-19 pandemic, efforts to achieve those Entitlements effectively ceased in 2020. Prior to cessation of development efforts, and in addition to the moneys borrowed from Linkage Financial and procured from Worldyao, Menachem Land and MJM Ventures had invested in excess of $4,400,000 for the acquisition of the Menachem Land and MJM Ventures Properties and in development costs including planning, engineering and related studies.

20.    When development ceased, Menachem Land and MJM Ventures, together with Worldyao commenced marketing their combined Properties for sale to a third party or to refinance those

Properties in order to retire existing debt. Those efforts drew several offers from interested parties, but the size and scope of the development and costs of the Entitlements, together with a dispute with Linkage over the payoff amount(s) on their loans prevented those sales from progressing.

21.    On or about December 21, 2021, Linkage Financial filed an action against Jane Un, in Superior Court for the County of Los Angeles, State of California, Case No. 21STCV46590 seeking to recover a money judgment against Jane Un for a personal guarantee for the amount of the Note secured by the $400,000 Abba Deed of Trust. (The "Abba Action")

22.    In March, 2022 Linkage Financial commenced a foreclosure under the private power of sale provisions of all four of the Linkage Deeds of Trust. As a result, the Debtor redoubled its efforts to find a buyer for the Subject Property in conjunction with the MJM Property at an amount sufficient to satisfy the Linkage Notes the Dimlux Note, the World Yao Resort obligations and the real property taxes. After receiving and reviewing three (3) such proposals, the Debtor settled on an offer from Richtop Property Management to purchase the Menachem and MJM Properties as well as the World Yao Properties for a combined  all cash price of $4,263,000.

23.    On  or  about  October 15, 2022 the Menachem Land, MJM Ventures and Worldyao Resort entered into a Vacant Land Purchase Agreement (the "PSA") and related documents to sell the Properties to Richtop Property Management, a California limited liability company dba R.P.M. Further, on or about October 15, 2022, the Debtor and MJM Ventures entered into an Addendum to that PSA clarifying and adding certain other terms and condition to the sale. Together, these two documents (The "Sale Documents") constitute the full terms and conditions of the sale of the Menachem Land, MJM Ventures and World Yao Resort Properties. A copy of the PSA and the Addendum #1 thereto are attached hereto, marked Exhibit "A" and incorporated herein by reference.

24. Currently, there are a total of three deeds of trust on the Menachem Land Property as follows:

a. A deed of trust dated as of January 26, 2016, and recorded with the County Recorder of the County of Riverside as Document No. 2016-0067184, between Menachem Land as Trustor and Linkage as Beneficiary securing a Note in the original amount of $470,000. (The Linkage $470,000 Riverside Deed of Trust).

b. A deed of trust dated as of January 26, 2016 and recorded with the County Recorder for the County of San Bernardino as Document No. 2016-0066709  between Menachem Land as Trustor and Linkage as Beneficiary securing a Note in the original amount of $470,000. (The Linkage $470,000 San Bernardino Deed of Trust).

c. A deed of trust dated as of August 10, 2018 and recorded with the San Bernardino County Recorder's Offices on January 30, 2020 as Instrument No. 2020-0047449 naming Menachem Land as Trustor and Dimlux, LLC as beneficiary. That deed of trust purports to secure an obligation in the amount of $147,000. (The "Dimlux $147,000 Deed of Trust")

25. In addition, the Menachem Land and MJM  Properties are subject to real property taxes owed to Riverside County and to San Bernardino County in the approximate total sum of $100,000.

26. A dispute has arisen between Menachem Land and Linkage as to the correct amount owed on the $470,000 Linkage Note. That dispute revolved around contentions by Linkage Financial that the $470,000 Linkage Note bore interest at the default rate of eighteen percent (18%) per annum upon its maturity, while the Debtor contended that the $470,000 Linkage Note continued to bear interest at the non-default contract rate of twelve percent (12%) per annum.

27.    As a result, in July, 2022 the Debtor, along with MJM Ventures commenced an action in Riverside Superior Court, Case No. CIVR 12202737, (The "Riverside Action") against Linkage Financial for Declaratory Relief seeking a determination of the correct amount owed on the $470,000 Linkage Note. That action is currently pending. The Debtor and MJM Ventures have negotiated a settlement with Linkage Financial in order to reach an agreement as to the correct amount owed on the $470,000 Linkage Note. The terms of that settlement are as follows:

a.    Linkage Financial has agreed to accept the total sum of $3,080,000 plus interest at the rate of twelve percent per annum from and after September 30, 2022, (the "Agreed Amount Owed") in full satisfaction of the obligations of the Debtor as well as the obligations of MJM on the Linkage Deeds of Trust on the MJM Venture Properties, as well as a fourth obligation to Linkage Financial in the original principal sum of $400,000, secured by a deed of trust on real property owned by Abba Bail Bonds, Inc. a California corporation, ("Abba") (the "Abba Deed of Trust") which is not the subject of either this bankruptcy or the MJM Ventures Bankruptcy. (The "Settlement Agreement") The calculation of the amounts owed as principal and interest under the Settlement Agreement are calculated at the non-default contract rate of twelve percent (12%) per annum and NOT at the default rate of eighteen percent (18%) per annum. As such, this sum represents a reduction of approximately $800,000 from the amount claimed by Linkage.

b.    The Agreed Amount Owed shall be paid to Linkage Financial directly from escrow on the sales of the MJM Ventures Property and the Menachem Land Properties which shall occur on or before November 28, 2022; and,

c.      Upon payment of the Agreed Amount Owed at close of escrow, Linkage Financial will release its Deeds of Trust on the Subject Property, the MJM Property and under the Abba Deed of Trust; and,

d.      Upon payment of the Agreed Amount Owed, the Debtor and MJM will dismiss the Riverside Suit against Linkage Financial, with prejudice; and,

e.      Upon  payment  of the Agreed  Amount Owed, Linkage Financial will dismiss the pending suits with prejudice  against Jane Un and Atilla  Gahbro currently pending in Los Angeles Superior Court Case No.'s

    I.      Jane Un 21STCV 46590;

    ii.     Atilla Ghabro , 21STCV46477; and

    iii.    Atilla Ghabro, 22STCV03221

f.      The Debtor, MJM Ventures, Abba , Jane Un, Atilla Ghabro and Linkage Financial will execute Mutual and General Releases between them in the form attached to the Settlement Agreement

28.     The Dimlux obligation is likewise in dispute. Menachem executed the Dimlux Deed of Trust on August, 10, 2018 in anticipation of Dimlux making a loan in the amount of $147,000. Menachem agreed to post a portion of the Subject Property, specifically, APN #s 0294-071-03; 0294-016-19; 0294-081-56as collateral for that loan. However, the loan from Dimlux was not forthcoming and no promissory note was ever signed.

29.     Dimlux later filed its own Chapter 11 proceeding in the Bankruptcy Court for the Central District of California Case No. 6:20-bk-13525 MJ on May19, 2020. Upon the direction of its counsel, Dimlux  caused the Dimlux Deed of Trust to be recorded prior to that filing. The Dimlux Bankruptcy

was converted to one under Chapter 7 and Larry Simmons ("Simmons") is the duly appointed Chapter

7 Trustee in that case. In discussions with Simmons, the parties have agreed that upon a payment to the

estate of Dimlux in the amount of $12,5000, the Dimlux Deed of Trust will be reconveyed. Counsel for

the Chapter 7 Trustee is preparing a notice of compromise of claim for approval of the Bankruptcy Court

in the Dimlux case. Assuming this is approved, Simmons, as Chapter 7 Trustee will be paid the sum of

$12,500 from the proceeds of this Sale at closing and will provide a full reconveyance of the Dimlux

Deed of Trust to escrow.

      30.    Based upon the following, the distribution of the Combined Purchase Price for the

Menacham Land Property, the MJM Ventures Property and the World Yao Properties at close of

escrow is as estimated as follows:

| | | |
|---|---|---|
| a. | Combined Purchase Price | $4,263,000 |
| b. | Less Costs of Sale est. 1% | <$42,630> |
| c. | Less Property Taxes | <$100,000> |
| d. | Less Payment to Linkage | <$3,080,000> |
| e. | Less Payment to World Yao on World Yao Resort Loan | <$161,950> |
| f. | Less Payment to Worldyao Resort for interest in Land | <$225,000> |
| g. | Less Payment to Dimlux Estate for reconveyance of Deed of Trust | <$12,500> |
| | Net Proceeds at Close | $640,920. |

      31.    In addition to the secured obligations of Menachem Land and MJM Properties in their

respective cases, the Debtors in those cases have combined certain administrative, priority and unsecured

obligations as follows:

a.    Administrative Expenses

      I.    The Law Offices of Stephen R. Wade (est)    <$50,000>

      ii.    UST 4Q Administrative Expenses
(Menachem Land portion
est. 1% of Purchase Price)    <$21,630>

      iii.    Less Administrative Expenses
(MJM Ventures Portion to
Chapter 7 Estate
Est. 2% of Purchase Price)    <$43,260>

b.    Priority Claims

      I.    Internal Revenue Service    <$800>

c.    Unsecured Claims (Non Insider)

      I.    Internal Revenue Service    <$600>

      ii.    Leodis Matthews    <$5,000>

      iii.    Zhong Lun firm    <$2,000>

      Total Non-Insider Unsecured Claims    <7,600>

d.    Unsecured Claims (Insider)

      I.    International Capital Alliance    <442,719>

      ii.    International Capital Alliance    <$476,119>

32.    Although only secured obligations will be paid at close of escrow the Net Proceeds at

Close of $640.920 there are sufficient funds to pay all estimated administrative, priority and Non-Insider

unsecured claims in both the Menachem Land and MJM Ventures cases in full, and leave and

additional sum of $510,030 for payment of the Insider unsecured claims to International Capital.

International Capital has agreed, as a condition of this sale to subordinate its unsecured claim(s) to all other Non-Insider Claims, including those scheduled above as well as any others which are timely filed and allowed in their respective cases.

33.    As and for additional consideration for the Sale of Menachem Land and MJM Ventures Properties to RPM, those entities have agreed with the present owners of the buyer, RPM, to accept a thirty percent (30%) equity interest in RPM at close of escrow. Acceptance of said interest allows the equity holders of Menachem Land and MJM Ventures, to continue to participate in the potential development of the jointly held properties in an effort to recover some or all of their contributions to the development of that land.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed this 10th Day of November, 2022 at Los Angeles, CA

JANE UN

**EXHIBIT "A"**



CALIFORNIA
ASSOCIATION
OF REALTORS®

# VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM VLPA, Revised 6/22)

Date Prepared: _October 12, 2022_

**1. OFFER:**

  **A.** **THIS IS AN OFFER FROM** _R.P.M. CORP._ ("Buyer").
    ☐Individual(s), ☐A Corporation, ☐A Partnership, ☐An LLC, ☐An LLP, or ☐Other _____ .

  **B.** **THE PROPERTY** to be acquired is _9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE_, situated in _SAN BERNARNIDO AND RIVERSIDE_ (City), _San Bernardino and Riverside_ (County), California, _____ (Zip Code), Assessor's Parcel No(s). _PLEASE SEE LIST BELOW_ ("Property").

    Further Described As _248.74 AC IN SAN BERNARDINO and 342 AC IN RIVERSIDE. TOTAL 590.74 AC LAND_
    (Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)

  **C.** **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**

  **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**

  **A.** **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.

  **B.** **CONFIRMATION:** The following agency relationships are here confirmed for this transaction.

    **Seller's Brokerage Firm** _____ License Number _____
    Is the broker of (check one): ☐ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
    **Seller's Agent** _____ License Number _____
    Is (check one): ☐the Seller's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
    **Buyer's Brokerage Firm** _CitiHome_ License Number _00895249_
    Is the broker of (check one): ☐ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
    **Buyer's Agent** _Tam Nguyen_ License Number _01759800_
    Is (check one): ☐the Buyer's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).

  **C.** ☐ **More than one Brokerage represents** ☐Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).

  **D.** **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B | Purchase Price | $ _4,263,000.00_ | ☒ All Cash |
| **B** | | Close of Escrow (COE) | ☐ ____ Days after Acceptance OR on ☒ _11/28/2022_ (date) (mm/dd/yyyy) | |
| **C** | 39A | Expiration of Offer | 3 calendar days after all Buyer Signature(s) or ____ (date) at 5PM or ____ ☐AM/ ☐PM | |
| **D(1)** | 5A(1) | Initial Deposit Amount _Escrow to open 10-17-22._ | $ _250,000.00_ ( _5.9_ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _7_ ) business days after Acceptance by wire transfer OR ☐ |
| **D(2)** | 5A(2) | ☐ Increased Deposit (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ ____ ( ____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR ☐ ____ (date) OR ☐ |
| **E(1)** | 5C(1) | Loan Amount(s): First / Interest Rate / Points | $ ____ ( ____ % of purchase price) Fixed rate or ☐ initial adjustable rate, not to exceed ____ % Buyer to pay zero points or up to ____ % of the loan amount | Conventional or, if checked, ☐FHA ☐VA (CAR Forms FVAC, HID attached) ☐ Seller Financing ☐ Assumed Financing ☐ Subject To Financing ☐ Other: ____ |
| **E(2)** | 5C(2) | Additional Financed Amount / Interest Rate / Points | $ ____ ( ____ % of purchase price) Fixed rate or ☐ initial adjustable rate, not to exceed ____ % Buyer to pay zero points or up to ____ % of the loan amount | Conventional or, if checked, ☐ Seller Financing ☐ Assumed Financing ☐ Subject To Financing ☐ Other: ____ |
| **E(3)** | 7A | Occupancy Type | Investment, or if checked, ☐Primary ☐Secondary | |
| **F** | 5D | Balance of Down Payment | $ _4,013,000.00_ | |
| | | **PURCHASE PRICE TOTAL** | $ _4,263,000.00_ | |

© 2022, California Association of REALTORS®, Inc.

**VLPA REVISED 6/22 (PAGE 1 OF 16)**

Buyer's Initials _____ Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 1 OF 16)**

CitiHome 10041 Garden Grove Blvd. Garden Grove, CA 92844    Phone: 714-988-5689    Fax:    590AC_RPM
Tam Nguyen    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 76201   www.lwolf.com

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*   Date: *October 12, 2022*

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | ☐ $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: _____ |
| G(2) | | ADDITIONAL FINANCE TERMS: _____ | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or ____ ) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or ____ ) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or ____ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| **I** | | **Intentionally Left Blank** | | |
| J | 19 | Final Verification of Condition | 5 (or ____ ) Days prior to COE | |
| K | 26 | Assignment Request | 17 (or ____ ) Days after Acceptance | |
| **L** | 8 | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** |
| L(1) | 8A | Loan(s) | 17 (or ____ ) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or *45* ) Days after Acceptance | ☐ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C | ☐ Purchase of Manufactured Home Buyer has (or ☐ has not) entered into contract to purchase a personal property manufactured home | 17 (or ____ ) Days after Acceptance ☐ Shall remain in effect until the Close of Escrow of the Property | REMOVAL OR WAIVER OF CONTINGENCY: |
| L(4) | 8D | ☐ Construction Loan Financing A draw from the construction loan will not (or will) be used to finance the Property | 17 (or ____ ) Days after Acceptance | Any contingency in L(1)-L(7 removed or waived by che applicable box above or at Contingency Removal (C.A CR) and checking the a |
| L(5) | 8E, 15 | Investigation of Property | 17 (or *45* ) Days after Acceptance | box therein. Removal or V time of offer is against Ager See paragraph 8J. |
| | | Informational Access to Property | 17 (or *45* ) Days after Acceptance | |
| | | Buyer's right to access the Property for informational purposes only is NOT a contingency and does NOT create additional cancellation rights for Buyer. | | ☐ CR attached |
| L(6) | 8F, 17A | Review of Seller Documents | 17 (or ____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(7) | 8G, 16A | Preliminary ("Title") Report | 17 (or ____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(8) | 8H, 11D | Common Interest Disclosures required by Civil Code § 4525 of this Agreement | | |
| L(9) | 8I, 9B(2) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or ____ ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(10) | 8L | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| **M** | | **Possession** | **Time for Performance** | |
| M | | Vacant Lot Delivery Property to be delivered subject to tenant rights, if any, except | Upon notice of recordation On COE Date | |
| **N** | | **Documents/Fees/Compliance** | **Time for Performance** | |
| N(1) | 17A | Seller Delivery of Documents | 7 (or ____ ) Days after Acceptance | |
| N(2) | 22B | Sign and return Escrow Holder General Provisions, Supplemental Instructions | 5 (or ____ ) Days after receipt | |
| N(3) | 11D(2) | Time to pay fees for ordering HOA Documents | 3 (or ____ ) Days after Acceptance | |
| N(4) | 35 | Evidence of representative authority | 3 Days after Acceptance | |

**VLPA REVISED 6/22 (PAGE 2 OF 16)**   Buyer's Initials _____ / _____   Seller's Initials _____ / _____   

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     599AC_RPM

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*    Date: *October 12, 2022*

| O | | Intentionally Left Blank | | |
|---|---|---|---|---|
| **P** | **Items Included and Excluded** | | | |
| **P(1)** | 9 | Items Included - All items specified in Paragraph 9B are included and the following, if checked: ☐ _____ ☐ _____ | | |
| **P(2)** | | Excluded Items: _____ ; ☐ _____ ; ☐ _____ | | |

| Q | | **Allocation of Costs** | | |
|---|---|---|---|---|
| | Paragraph | Item Description | Who Pays (If Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
| **Q(1)** | 11E | Natural Hazard Zone Disclosure Report, Including tax information | ☐ Buyer ☐ Seller ☒ Both _____<br><br>Provided by: *Click here to select your Service Provider* | ☐ Environmental<br>☐ Other _____ |
| **Q(2)** | 15B(1)(D) | Environmental Survey | ☐ Buyer ☐ Seller ☐ Both | |
| **Q(3)** | | _____ Report | ☐ Buyer ☐ Seller ☐ Both | |
| **Q(4)** | 22B | Escrow Fees | ☐ Buyer ☐ Seller ☒ Both _____<br>☐ Each to pay their own fees | Escrow Holder: |
| **Q(5)** | 16 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ | Title Company (If different from Escrow Holder): |
| **Q(6)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(7)** | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(8)** | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(9)** | 11D(2) | OA fee for preparing disclosures | Seller | |
| **Q(10)** | | OA certification fee | Buyer | |
| **Q(11)** | | OA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee.  Applies If separately billed or itemized with cost in transfer fee. |
| **Q(12)** | | Private transfer fees | Seller, or If checked, ☐ Buyer ☒ Both _____ | |
| **Q(13)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(14)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **R** | Additional Tenancy Documents ☐ Income and Expense Statements  ☐ Tenant Estoppel Certificate | | | |
| **S** | OTHER TERMS: *See Text Overflow Addendum (C.A.R. Form TOA) paragraph 1* | | | |

**4.    PROPERTY ADDENDA AND ADVISORIES: (check all that apply)**

**A.    PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
☐ Other _____

**B.    OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Addendum # _____ (C.A.R. Form ADM)    ☐ Short Sale Addendum (C.A.R. Form SSA)
☐ Back Up Offer Addendum (C.A.R. Form BUO)    ☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Assumed Financing Addendum (C.A.R. Form AFA)
☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)    ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
☐ Other _____    ☐ Other _____

**C.    BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be Incorporated Into this Agreement):**
☒ Buyer's Vacant Land Additional Inspection Advisory (C.A.R. Form BVLIA)
☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
☒ Wire Fraud Advisory (C.A.R. Form WFA)    ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
        (Parties may also receive a privacy disclosure from their own Agent.)
☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)    ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA)    ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
☐ REO Advisory (C.A.R. Form REO)    ☐ Probate Advisory (C.A.R. Form PA)
☐ Other _____    ☐ Other _____

VLPA REVISED 6/22 (PAGE 3 OF 16)        Buyer's Initials ___ ___        Seller's Initials ___ ___

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 3 OF 16)**

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*    Date: <u>*October 12, 2022*</u>

**5.  ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

  **A.  DEPOSIT:**

    (1)  **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

    (2)  **INCREASED DEPOSIT:** Increased deposit to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.

    (3)  **RETENTION OF DEPOSIT: Paragraph 36, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

  **B.  ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

  **C.  LOAN(S):**

    (1)  **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), Assumed Financing, Subject To Financing, or Other is checked in **paragraph 3E(1)**.

    (2)  **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing UNLESS Seller Financing (C.A.R. Form SFA), Assumed Financing, Subject To Financing, or Other is checked in **paragraph 3E(2)**.

    (3)  **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

    (4)  **ASSUMED OR SUBJECT TO FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

  **D.  BALANCE OF PURCHASE PRICE (DOWN PAYMENT) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

  **E.  LIMITS ON CREDITS TO BUYER:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6.  ADDITIONAL FINANCING TERMS:**

  **A.  VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

  **B.  VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

  **C.  BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date **(paragraph 3B)** even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7.  CLOSING AND POSSESSION:**

  **A.  OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.

  **B.  CONDITION OF PROPERTY ON CLOSING:**

    (1)  Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

    (2)  **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

  **C.**  Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

**VLPA REVISED 6/22 (PAGE 4 OF 16)**    Buyer's Initials _____ _____    Seller's Initials _____ _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    590AC__RPM

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,* ___ Date: *October 12, 2022*

**8.   CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A.   LOAN(S):**

(1)   This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form,** contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2)   Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's **Investigation of Property** contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.

(3)   Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

(4)   If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(5)   NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B.   APPRAISAL:**

(1)   This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form,** contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2),** without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

(2)   NO APPRAISAL CONTINGENCY: If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

(3)   ☒ Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

**C.   MANUFACTURED HOME PURCHASE:** If checked in **paragraph 3L(3)**, this Agreement is contingent upon Buyer acquiring a personal property manufactured home to be placed on the Property after Close Of Escrow.

**D.   CONSTRUCTION LOAN FINANCING:** If checked in **paragraph 3L(4)**, this Agreement is contingent upon Buyer obtaining a construction loan.

**E.   INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property.

**F.   REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review of Seller's documents required in **paragraph 17A**.

**G.   TITLE:**

(1)   This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 16G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any platted easements.

(2)   Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**H.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(8)**, contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11D** ("CI Disclosures").

**I.   BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(2)**, is, as specified in **paragraph 3L(9)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(9)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**J.   REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**K.   REMOVAL OF CONTINGENCY OR CANCELLATION:**

(1)   **For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**

(2)   For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after receipt of the applicable Seller Documents, Preliminary Report, or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.

(3)   If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**L.   SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP)/is checked as a contingency of this Agreement in **paragraph 3L(10)**.

**VLPA REVISED 6/22 (PAGE 5 OF 16)**         Buyer's Initials ___   Seller's Initials ___

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 599AC_RPM

Property Address: _9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,_    Date: **October 12, 2022**

**9.   ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.   NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the Property and are not intended to affect the price. All items are transferred without Seller warranty.

**B.   ITEMS INCLUDED IN SALE:**

(1)   All EXISTING fixtures and fittings that are attached to the Property;

(2)   **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(I)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(II)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(3)   Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(I)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(2)**, and **(II)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

(4)   A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in **paragraph 3N(1)**.

(5)   Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.

(6)   As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

**C.   ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, all items specified in **paragraph 3P(2)** are excluded from the sale.

**10. ALLOCATION OF COSTS FOR INSPECTIONS, REPORTS AND CERTIFICATES: Paragraphs 3Q(1-3) and (5)** only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3S, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).**

**11. SELLER DISCLOSURES:**

**A.   WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(I)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (II)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (III)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**B.   MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**C.   NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**D.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1)   Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

(2)   If the Property is a condominium or is located in a planned development or other common interest development with a OA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee for the following items to the OA (C.A.R. Form HOA-IR): **(I)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(II)** disclosure of any pending or anticipated claim or litigation by or against the OA; **(III)** a statement containing the location and number of designated parking and storage spaces; **(Iv)** Copies of the most recent 12 months of OA minutes for regular and special meetings; **(v)** the names and contact information of all OAs governing the Property; **(vI)** pet restrictions; and **(vII)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to OA or management company to pay for any of the above.

**E.   NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(I)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(II)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(III)** disclose any other zone as required by Law and provide any other information required for those zones.

**VLPA REVISED 6/22 (PAGE 6 OF 16)**        Buyer's Initials _____        Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 6 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com            590AC__RPM

Property Address: **9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,**    Date: **October 12, 2022**

F.  **ADDITIONAL DISCLOSURES:** Within the time specified in **paragraph 3N(1)**, if Seller has actual knowledge, Seller shall provide to Buyer, in writing, the following information:
  (1) **LEGAL PROCEEDINGS:** Any lawsuits by or against Seller, threatening or affecting the Property, including any lawsuits alleging a defect or deficiency in the Property or common areas, or any known notices of abatement or citations filed or issued against the Property.
  (2) **AGRICULTURAL USE:** Whether the Property is subject to restrictions for agricultural use pursuant to the Williamson Act (Government Code §§ 51200-51295).
  (3) **DEED RESTRICTIONS:** Any deed restrictions or obligations.
  (4) **FARM USE:** Whether the Property is in, or adjacent to, an area with Right to Farm rights (Civil Code § 3482.5 and § 3482.6).
  (5) **ENDANGERED SPECIES:** Presence of endangered, threatened, "candidate" species, or wetlands on the Property.
  (6) **ENVIRONMENTAL HAZARDS:** Any substances, materials, or products that may be an environmental hazard including, but not limited to, asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, and contaminated soil or water on the Property.
  (7) **COMMON WALLS:** Any features of the Property shared in common with adjoining landowners, such as walls, fences, roads, and driveways, and agriculture and domestic wells whose use or responsibility for maintenance may have an effect on the Property.
  (8) **LANDLOCKED:** The absence of legal or physical access to the Property.
  (9) **EASEMENTS/ENCROACHMENTS:** Any encroachments, easements, or similar matters that may affect the Property.
  (10) **SOIL FILL:** Any fill (compacted or otherwise), or abandoned mining operations on the Property.
  (11) **SOIL PROBLEMS:** Any slippage, sliding, flooding, drainage, grading, or other soil problems.
  (12) **EARTHQUAKE DAMAGE:** Major damage to the Property of any of the structures from fire, earthquake, floods, or landslides.
  (13) **ZONING ISSUES:** Any zoning violations, non-conforming uses, or violations of "setback" requirements.
  (14) **NEIGHBORHOOD PROBLEMS:** Any neighborhood noise problems, or other nuisances.
  (15) **SURVEY, PLANS, PERMITS AND ENGINEERING DOCUMENTS:** If in Seller's possession, Copies of surveys, plans, specifications, permits and approvals, development plans, licenses, and engineering documents, if any, prepared on Seller's behalf on in Seller's possession.
  (16) **VIOLATION NOTICES: Seller shall disclose any notice of violations of any Law filed or issued against the Property.**
G.  **MELLO-ROOS TAX; 1915 BOND ACT:** Within the time specified in **paragraph 3N(1)**, Seller shall: **(i)** make a good faith effort to obtain a notice from any local agencies that levy a special tax or assessment on the Property (or, if allowed, substantially equivalent notice), pursuant to the Mello-Roos Community Facilities Act, and Improvement Bond Act of 1915, and **(ii)** promptly Deliver to Buyer any such notice obtained.
H.  **KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.
I.  **SELLER VACANT LAND QUESTIONNAIRE:** Seller shall, within the time specified in **paragraph 3N(1)**, complete and provide Buyer with a Seller Vacant Land Questionnaire (C.A.R. Form VLQ).
J.  **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information, or representations previously provided to Buyer, Seller shall promptly Deliver a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

12. **TENANCY RELATED DISCLOSURES:** Within the time specified in **paragraph 3N(1)**, and subject to Buyer's right of review, Seller shall disclose, make available or Deliver, as applicable, to Buyer, the following information:
  A.  **RENTAL/SERVICE AGREEMENTS: (i)** All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; **(ii)** A rental statement including names of tenants, rental rates, period or rental, date of last rent increase, security deposits, rental concessions, rebates or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any rebate, concession, or other benefit, except as set forth in these documents. Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business.
  B.  **INCOME AND EXPENSE STATEMENTS:** If checked in **paragraph 3R**, the books and records for the Property, if any, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business and used by Seller in the computation of federal and state income tax returns.
  C.  **TENANT ESTOPPEL CERTIFICATES:** If checked in **paragraph 3R**, Tenant Estoppel Certificates (C.A.R. Form TEC). Tenant Estoppel Certificates shall be completed by Seller or Seller's agent and delivered to tenant(s) for tenant(s) to sign and acknowledge: **(i)** that tenant(s)' rental or lease agreements are unmodified and in full force and effect, (or if modified, stating all such modifications); **(ii)** that no lessor defaults exist; and **(iii)** stating the amount of any prepaid rent or security deposit. Seller shall exercise good faith to obtain tenant(s)' signature(s), but Seller cannot guarantee tenant(s)' cooperation. In the event Seller cannot obtain signed Tenant Estoppel Certificates within the time specified above, Seller shall notify Buyer and provide the unsigned one that was provided to tenant(s). If, after the time specified for Seller to Deliver the TEC to Buyer, any tenant(s) sign and return a TEC to Seller, Seller shall Deliver that TEC to Buyer.
  D.  **SELLER REPRESENTATIONS:** Unless otherwise disclosed under **paragraph 11**, **paragraph 12**, or under any disclosure Delivered to Buyer:
    (1) Seller represents that Seller has no actual knowledge that any tenant(s): **(i)** has any current pending lawsuit(s), investigation(s), Inquiry(ies), action(s), or other proceeding(s) affecting the Property of the right to use and occupy it; **(ii)** has any unsatisfied mechanics or materialman lien(s) affecting the Property; and **(iii)** is the subject of a bankruptcy. If Seller receives any such notice, prior to Close Of Escrow, Seller shall immediately notify Buyer.
    (2) Seller represents that no tenant is entitled to any rebate, concessions, or other benefit, except as set forth in the rental service agreements.
    (3) Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business and the income and expense statements are and used by Seller in the computation of federal and state income tax returns.

13. **CHANGES DURING ESCROW:**
  A.  Prior to Close Of Escrow, Seller may engage in the following acts ("Proposed Changes"), subject to Buyer's rights in **paragraph 13B: (i)** rent or lease any vacant unit or other part of the premises; **(ii)** alter, modify, or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify, or extend any service contract(s); or **(iv)** change the status of the condition of the Property.

**VLPA REVISED 6/22 (PAGE 7 OF 16)**    Buyer's Initials _____    Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 7 OF 16)**

Property Address: _9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,_    Date: _October 12, 2022_

**B.** (1) At least **7 Days** prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of such Proposed Change
(2) Within **5 Days** after receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

**14. SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the California Civil Code.

**15. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer shall, within the time specified in **paragraph 3L(5)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

**B.** Buyer Investigations include, but are not limited to:
(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
   (A) A general inspection.
   (B) An inspection for lead-based paint and other lead-based paint hazards.
   (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
   (D) A phase one environmental survey, paid for and obtained by the party indicated in **paragraph 3Q(2)**. If Buyer is responsible for obtaining and paying for the survey, Buyer shall act diligently and in good faith to obtain such survey within the time specified in **paragraph 3L(5)**. Buyer has **5 Days** after receiving the survey to remove this portion of the Buyer's Investigation contingency.
   (E) Any other specific inspections of the physical condition of the land and improvements.
(2) All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Vacant Land Additional Inspection Advisory (C.A.R. Form BVLIA) for more.
(3) A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to **paragraphs 3, 11, 12, 13, 16A,** and **17A.**

**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (I) invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or (II) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigationsand through the date possessionis delivered to Buyer. Buyer shall, (I) by the time specified in **paragraph 3L(5)**, complete Buyer Investigationsand satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and (II) by the time specified in **paragraph 3L(5)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

**E.** Buyer Indemnity and Seller protection for entry upon the Property: Buyer shall: (I) keep the Property free and clear of liens; (II) repair all damage arising from Buyer Investigations; and (III) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**F.** BUYER IS STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY AND ALL MATTERS AFFECTING THE VALUE OR DESIRABILITY OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO, THE ITEMS SPECIFIED BELOW. IF BUYER DOES NOT EXERCISE THESE RIGHTS, BUYER IS ACTING AGAINST THE ADVICE OF BROKERS. BUYER UNDERSTANDS THAT ALTHOUGH CONDITIONS ARE OFTEN DIFFICULT TO LOCATE AND DISCOVER, ALL REAL PROPERTY CONTAINS CONDITIONS THAT ARE NOT READILY APPARENT AND THAT MAY AFFECT THE VALUE OR DESIRABILITY OF THE PROPERTY. BUYER AND SELLER ARE AWARE THAT BROKERS DO NOT GUARANTEE, AND IN NO WAY ASSUME RESPONSIBILITY FOR, THE CONDITION OF THE PROPERTY. BROKERS HAVE NOT AND WILL NOT VERIFY ANY OF THE ITEMS IN PARAGRAPH 15, UNLESS OTHERWISE AGREED IN WRITING.

**G.** SIZE, LINES, ACCESS, AND BOUNDARIES: Lot size, property lines, legal or physical access, and boundaries including features of the Property shared in common with adjoining landowners, such as walls, fences, roads, and driveways, whose use or responsibility for maintenance may have an effect on the Property and any encroachments, easements, or similar matters that may affect the Property. (Fences, hedges, walls, and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. Property lines may be verified by survey.) (Unless otherwise specified in writing, any numerical statements by Brokers regarding lot size are APPROXIMATIONS ONLY, which have not been and will not be verified, and should not be relied upon by Buyer.)

**H.** ZONING AND LAND USE: Past, present, or proposed laws, ordinances, referendums, initiatives, votes, applications, and permits affecting the current use of the Property, future development, zoning, building, size, governmental permits and inspections. Any zoning violations, non-conforming uses, or violations of "setback" requirements. (Buyer should also investigate whether these matters affect Buyer's intended use of the Property.

**I.** UTILITIES AND SERVICES: Availability, costs, restrictions, and location of utilities and services, including but not limited to, sewerage, sanitation, septic and leach lines, water, electricity, gas, telephone, cable TV, and drainage.

**J.** ENVIRONMENTAL HAZARDS: Potential environmental hazards, including but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel, oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, including mold (airborne, toxic, or otherwise), fungus or similar contaminant, materials, products, or conditions.

VLPA REVISED 6/22 (PAGE 8 OF 16)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 8 OF 16)**

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,* ___ Date: <u>*October 12, 2022*</u>

**K.** **GEOLOGIC CONDITIONS:** Geologic/seismic conditions, soil and terrain stability, suitability and drainage including slippage, sliding, flooding, drainage, grading, fill (compacted or otherwise), or other soil problems.

**L.** **NATURAL HAZARD ZONE:** Special Flood Hazard Areas, Potential Flooding (Inundation) Areas, Very High Hazard Zones, State Fire Responsibility Areas, Earthquake Fault Zones, Seismic Hazard Zones, or any other zone for which disclosure is required by Law.

**M.** **PROPERTY DAMAGE:** Major damage to the Property of any of the structures or non-structural systems and components and any personal property included in the sale from fire, earthquake, floods, landslides, or other causes.

**N.** **NEIGHBORHOOD, AREA, and PROPERTY CONDITIONS:** Neighborhood or are conditions, including Agricultural Use Restrictions pursuant to the Williamson Act (Government Code §§ 51200-51295), Right to Farm Laws (Civil Code § 3482.5 and § 3482.6), schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy, and cost of any speed-wired, wireless internet connections, or other telecommunications or other technology services and installations, proximity to commercial, industrial, or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, abandoned mining operations on the Property, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Owners" Association requirements, conditions, and influences of significance to certain cultures and/or religions, and personal needs, requirements, and preferences of Buyer.

**O.** **COMMON INTEREST SUBDIVISIONS; OWNER ASSOCIATIONS:** Facilities and condition of common areas (facilities such as pools, tennis courts, walkways, or other areas co-owned in undivided interest with others), Owners' Association that has any authority over the subject property, CC&Rs, or other deed restrictions or obligations, and possible lack of compliance with any Owners' Association requirements.

**P.** **SPECIAL TAX:** Any local agencies that levy a special tax on the Property pursuant to the Mello-Roos Community facilities Act or Improvement Bond At of 1915.

**Q.** **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of landlord to terminate a tenancy.

**R.** **MANUFACTURED HOME PLACEMENT:** Conditions that may affect the ability to place and use a manufactured home on the Property.

**16.** **TITLE AND VESTING:**

**A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(5)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

**D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (For example, for stock cooperative or tenancy in common, respectively, an assignment of stock certificate or assignment of seller's interest in the real property), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**G.** Buyer shall receive a Standard Coverage Owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title Insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**17.** **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B, 11A, 11D, 11E, 11F, 11G, 11H, 11I, 11J, 12A, 12B, 12C, 16A, 16D and 35**.

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

**(1)** Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(2)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

**(2)** Buyer may, within the time specified in **paragraph 3L(5)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

VLPA REVISED 6/22 (PAGE 9 OF 16)     Buyer's Initials _____     Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 9 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     590AC__RPM



Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*    Date: *October 12, 2022*

    (3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency.

    (4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 17C**, Buyer retains the right, in writing, to either **(I)** remove remaining contingencies, or **(II)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 17C(1)**.

**C.   SELLER RIGHT TO CANCEL:**

    (1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

    (2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(I)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(iv)** Deliver a letter as required by **paragraph 6B**; **(v)** In writing assume or accept leases or liens specified in **paragraph 8I**; **(vi)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 16E**; **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 5A(2)** and **36**; **(viii)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 35**; or **(ix)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees allocated to Seller in this Agreement and already paid by Escrow prior to cancellation of this Agreement and notification to Escrow.

    (3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**D.   BUYER RIGHT TO CANCEL:**

    (1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Buyer shall authorize the return of Buyer's deposit, except for fees allocated to Seller in the Agreement and already paid by Escrow prior to cancellation of this Agreement and notification to Escrow.

    (2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

    (3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**E.   NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(I)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 17**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F.   EFFECT OF REMOVAL OF CONTINGENCIES:**

    (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

    (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G.   DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the agreed time, the DCE shall be deemed invalid and void and Seller or Buyer shall be required to Deliver a new DCE.

VLPA REVISED 6/22 (PAGE 10 OF 16)    Buyer's Initials _____    Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 10 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 76201   www.lwolf.com    590AC_RPM

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*    Date: *October 12, 2022*

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less (i) fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and (ii) any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds** (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. **Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

18. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

19. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to **paragraph 7B**; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

20. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, OA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any OA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and OA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

21. **BROKERS AND AGENTS:**
A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.
C. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations, and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

22. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder**, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3S, 4A, 4B, 5A(1-2) 5D, 5E, 11A, 11D(2), 16 (except 16D), 17H, 20, 21A, 22, 26, 32, 34, 35, 39, 40, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 21A** or **paragraph 3 of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.
B. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 **Days**, shall pay to Escrow Holder or OA or OA management company or others any fee required by **paragraphs 3, 8, 11**, or elsewhere in this Agreement.

**VLPA REVISED 6/22 (PAGE 11 OF 16)**    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*    Date: *October 12, 2022*

C. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11A**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11A**.

D. Agents are not a party to the escrow except for the sole purpose of receiving compensation pursuant to **paragraph 21A and paragraph 3 of the Real Estate Brokers Section**. If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 21A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

E. Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

F. Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraph 5A(1) and 5A(2)**. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

G. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

23. **SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: (I) any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; (II) California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and (III) Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

25. **ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 37A**.

26. **ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

27. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

28. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (I) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (II) Agent(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (III) Agent(s) has/have made no representation concerning the existence, testing, discovery, location, and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (IV) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discover, location and evaluation of/for, and risks posed by, environmentally hazardous substances, in any, located on or potentially affecting the Property.

29. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that building be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker or agent does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact a qualified California real estate attorney, contractor, architect, engineer, or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

30. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

VLPA REVISED 6/22 (PAGE 12 OF 16)    Buyer's Initials  _____    Seller's Initials  _____    

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 12 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 76201    www.lwolf.com  590AC_RPM

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,* Date: *October 12, 2022*

31. **COPIES:** Seller and buyer each represent that Copies of all reports, certificates, approvals, and other documents that are furnished to the other are true, correct, and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

32. **DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

   A. **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

   B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**

   C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

   D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

   E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

   F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

   G. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

   H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.

   I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

   J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

   K. **"Deliver", "Delivered"** or **"Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means (I) a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or (II) an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

   L. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

   M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

   N. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 39** or **paragraph 40.**

   O. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

   P. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

   Q. **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

33. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

34. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**VLPA REVISED 6/22 (PAGE 13 OF 16)**    Buyer's Initials _____    Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 13 OF 16)**

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,* ___ Date: *October 12, 2022*

**35. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 39** and **40** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall Deliver to the other Party and Escrow Holder, as specified in **paragraph 3N(4)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**36. LIQUIDATED DAMAGES:**
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials _____     Seller's Initials _____

**37. MEDIATION:**
  **A.** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**)or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s)**, who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
  **B.** **ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 38B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 38C; and (iii) Agent's rights and obligations are further specified in paragraph 38D.**

**38. ARBITRATION OF DISPUTES:**
  **A.** **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR [ ] _____ _____. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
  **B.** **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**
  **C.** **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**
  **D.** **AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
  **E.** **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

  **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____     Seller's Initials _____

**VLPA REVISED 6/22 (PAGE 14 OF 16)**     Buyer's Initials _____     Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 14 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     590AC_RPM

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*   Date: *October 12, 2022*

**39. OFFER**

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

   (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

   (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 35** for additional terms.

   (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

   (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.** The VLPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):**

(Signature) By, _____   Date: *10/15/22*

   Printed name of BUYER: *R.P.M. CORP.* _____

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

(Signature) By, _____   Date: _____

   Printed name of BUYER: _____

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**40. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

   **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.**
   Seller shall return and include the entire agreement with any response.
   ☐ Seller Counter Offer (C.A.R. Form SCO or SMCO)
   ☐ Back-Up Offer Addendum (C.A.R. Form BUO)

**B.** ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

   (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

   (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 35** for additional terms.

   (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

   (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.** The VLPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):**

(Signature) By, _____   Date: *10-15-22*

   Printed name of SELLER: *MJM VENTURES, INC; MENACHEM, LLC, WORLD YAO RESORT, INC*

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

(Signature) By, _____   Date: _____

   Printed name of SELLER: _____

   ☐ Printed Name of Legally Authorized Signer: _____   Title, if applicable, _____

☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

**OFFER NOT ACCEPTED:** _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date)

_Seller's Initials_

---

**VLPA REVISED 6/22 (PAGE 15 OF 16)**     Buyer's Initials _____     Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 15 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     590AC_RPM

Property Address: *9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO AND RIVERSIDE,*   Date: *October 12, 2022*

**REAL ESTATE BROKERS SECTION:**
1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   A. Buyer's Brokerage Firm *CitiHome* _____ Lic. # *00895249* _____
      By _____ *Tam Nguyen* Lic. # *01759600* _____ Date *10/15/2022*
      By _____ Lic. # _____ Date _____
      ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es):**
         Email _____ Text # _____
         Alternate: _____
         ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address *10041 GARDEN GROVE BLVD* _____ City *GARDEN GROVE* _____ State *CA* ___ Zip *92844*

   B. Seller's Brokerage Firm _____ Lic. # _____
      By _____ Lic. # _____ Date _____
      By _____ Lic. # _____ Date _____
      ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
      ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

      **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent):**
         Email _____ Text # _____
         Alternate: _____
         ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
      Address _____ City _____ State _____ Zip _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (If checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
Broker or Designee Initials

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

VLPA REVISED 6/22 (PAGE 16 OF 16)   Buyer's Initials _____ Seller's Initials _____

**VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (VLPA PAGE 16 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   590AC_RPM

**CALIFORNIA ASSOCIATION OF REALTORS®**

**TEXT OVERFLOW ADDENDUM No. ___1___**
(C.A.R. Form TOA, Revised 6/16)

This addendum is given in connection with the property known as _9 LOTS IN SAN BERNARDINO AND 13 LOT IN RIVERSIDE , SAN BERNARNIDO_
_248.74 AC IN SAN BERNARDINO AND 342 AC IN RIVERSIDE.  TOTAL 590.74 AC LAND_ ("Property"),
in which _____ R.P.M. CORP. _____ is referred to as ("Buyer")
and _____ MJM VENTURES, INC; MENACHEM, LLC,  WORLD YAO RESORT, INC _____ is referred to as ("Seller").

**1) VLPA, S, OTHER TERMS:**
1. APN: 0294-081-58; 40 AC; SAN BERNARDINO COUNTY (SB); MJM VENTURES, INC; JANE UN;
2. APN: 0294-081-59; 40 AC; SB; MJM VENTURES, INC;
3. APN: 0294-081-14; 30 AC; SB; MJM VENTURES, INC;
4. APN: 0294-071-02; 40 AC; SB; MJM VENTURES, INC;
5. APN: 0294-061-19; 18.87 AC; SB; MENACHEM LAND, LLC; JANE UN and ATILLA GAHBRO;
6. APN: 0294-071-03; 4 AC; SB; MENACHEM LAND, LLC;
7. APN: 0294-081-55; 17 AC; SB; MENACHEM LAND, LLC;
8. APN: 0294-081-56; 32 AC; SB; MENACHEM LAND, LLC;
9. APN: 0294-081-57; 8 AC; SB; MENACHEM LAND, LLC;
10. APN: 471-110-012; 20 AC; RIVERSIDE : MENACHEM LAND, LLC;
11. APN: 471-110-013; 10 AC; RIVERSIDE; MENACHEM LAND, LLC;
12. APN: 471-110-015; 5 AC; RIVERSIDE; MENACHEM LAND, LLC;
13. APN: 471-110-018; 5 AC; RIVERSIDE; MENACHEM LAND, LLC;
14. APN: 471-130-001; 120 AC; RIVERSIDE; MENACHEM LAND, LLC;
15. APN: 471-130-002; 40 AC; RIVERSIDE; MENACHEM LAND, LLC;
16. APN: 471-140-001; 61 AC; RIVERSIDE; MENACHEM LAND, LLC;
17. APN: 471-140-002; 8 AC; RIVERSIDE; MENACHEM LAND, LLC;
18. APN: 471-140-005; 13 AC; RIVERSIDE; MENACHEM LAND, LLC;
19. APN: 471-140-007; 35 AC; RIVERSIDE; MENACHEM LAND, LLC;
20. APN: 471-110-010; 15 AC; RIVERSIDE; WORLD YAO RESORT, INC; JANE UN;
21. APN: 471-110-011; 5 AC; RIVERSIDE; WORLD YAO RESORT, INC;
22. APN: 471-110-020; 5 AC; RIVERSIDE;  WORLD YAO RESORT, INC;
23. APN: 0294-061-19; 18.87 AC; SAN BERNARDINO; WORLD YAO RESPORT, INC;
    (LOT #5 AND LOT #23 ARE 50% / 50% INTERESTED OWNED BY 2 COMPANIES)

The foregoing terms and conditions are hereby incorporated in and made a part of the paragraph(s) referred to in the document to
which this TOA is attached. The undersigned acknowledge receipt of a copy of this TOA.

Buyer _____    Date _10/15/22_
R.P.M. CORP.

Buyer _____    Date _____

Seller _____ president _____    Date _10-15-22_ .
MJM VENTURES, INC; MENACHEM, LLC, WORLD YAO RESORT,

Seller _____    Date _____

©2014, California Association of REALTORS®, Inc. United States Copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this
form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY
OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from C.A.R. It is not intended to identify the user as a REALTOR®.
REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its
Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**TOA REVISED 6/16 (PAGE 1 OF 1)**

**TEXT OVERFLOW ADDENDUM (TOA PAGE 1 OF 1)**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
405 N. Indian Hill Blvd, Claremont, California 91711

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion*)
 ORDER APPROVING THE SALE OF ASSETS OF THE ESTATE (11 U.S.C. 363(b) and (m); ORDER WAIVING THE ·
 THE 14 DAY STAYS OF FRBP 6004(H) and 6004(D); MEMORANDUM OF POINTS AND AUTHORITIES
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
11/10/2022    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 11/10/2022    , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

The Hon.Vincent P. Zurzolo
U.S. Bankruptcy Court - Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)             , I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/10/2022 | Kathy R. Chevalier | |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This Motion is the culmination of a process which began in 2002 when MJM Ventures acquired land in San Bernardino County, California with the intention of development into a residential/mixed use project. As set forth below, from that point, events have occurred that have resulting in the filing of multiple bankruptcies by and against MJM Ventures and its affiliate, Menachem Land, at least six lawsuits in Superior Courts in Riverside, San Bernardino and Los Angeles Counties regarding the Properties and the loans secured thereby. This culminated in the filing of Chapter 11 petitions by Menachem Land and MJM Ventures in the Bankruptcy Court for the Central District of California, Los Angeles Division on August 24, 2022, and September 6, 2022.

Since the filing, MJM Ventures and Menachem Land have navigated the complexities of this case, with the assistance of their counsel, have achieved a total, global resolution of all these matters wherein the following agreements have been reached:

A.    The Menachem Land and MJM Ventures Properties, together with certain other contiguous property owned by Worldyao Resort, are proposed to be sold to a third party, Richtop Property Management Corporation, a California corporation, dba R.P.M., for a combined sales price of $4,263,000 in cash at close.

B.    A settlement with the holder of the first priority deeds of trust on the Properties, Linkage Financial Group ("Linkage") has been reached wherein Linkage will be paid the total sum of $3,080,000 upon close of escrow for satisfaction of the three deeds of trust on the MJM Ventures and Menachem Land Properties as well as a fourth obligation to Linkage secured by property owned by Abba Bail Bonds, Inc., a California corporation in Colton,

CA. This settlement will include mutual releases by all parties and dismissals with prejudice of all pending actions between them.

C.    A settlement with the Chapter 7 estate of Dimlux, Inc., a debtor in a pending Chapter 7 case in the Bankruptcy Court for the Central District of California, Case No. 6:20-bk-13525 MH. (The "Dimlux Bankruptcy"). This settlement resolves a dispute concerning a deed of trust recorded against the Menachem Land securing a purported loan from Dimlux to Menachem Land.

D.    An agreement between Menachem Land, MJM Ventures and World Yao Resort under which World Yao Resort will receive payment on an obligation secured by a deed of trust on property owned by Menachem Land, and receive an agreed upon portion of the Purchase Price for its interests in certain parcels being sold to R.P.M.

As a result of the Sale to R.P.M. and the agreements above, the estates of MJM Ventures and Menachem Land will pay all of the secured obligations on the Properties sold, the current property taxes to Riverside and San Bernardino Counties and deliver title to the Properties to R.P.M free and clear of liens. In addition, there will be approximately $650,000 in net cash at close which is sufficient to pay all administrative, priority and general unsecured claims of Non-Insiders in both cases as well to make payment of approximately $500,000 to the unsecured claims of International Capital Alliance, a company owned by one of the principals of MJM Ventures, Jane Un, in the total sum of $918,883 representing approximately sixty percent (60%) of the total amount owed to International Capital Alliance.

Finally, in addition to the cash paid by R.P.M. at close, R.P.M. has agreed to provide to Menachem Land and MJM Ventures a thirty percent (30%) equity interest in R.P.M, thus allowing the

equity holders of those entities to possibly recover their equity interest(s) in the land if the development process proceeds to a successful conclusion.

The provisions of the sale to R.P.M. call for a close of escrow conditioned upon the approval of the Bankruptcy Court in both the MJM Ventures and Menachem Land cases. Counsel for Menachem Land is in contact with the Trustee in the MJM Ventures case, Rosendo Gonzalez, who is reviewing the proposed sale, along with the information contained in this Motion and such other information as is necessary to make a determination as to whether the Proposed Sale to R.P.M. is in the best interests of the creditors in the MJM Ventures Case. In the event he agrees with this Proposed Sale, the estate of MJM Ventures will join Menachem Land in seeking the earliest possible approval of the Proposed Sale and the other Agreements set forth herein.

## II.    THE PROPOSED SALE SHOULD BE APPROVED

11 U.S.C. 363(b) provides for the sale of property of the estate outside of the ordinary course of business "after notice and hearing". Case law interpreting the approval of such sales has vested the determination on two basic principles. The first, is that determination of the appropriateness of such a sale, rests largely in the "sound business judgment" of the trustee or debtor in possession. In re: Beker Industries Corp (Bankr S.D.N.Y. 1986) 64 BR 900. This test, which largely mirrors the business judgment test in state law for actions of directors, requires that the proponent of the sale provide the court with sound business reasons for the sale to occur and for the price and terms selected.

In this case, the property being sold is the subject of numerous liens and disputes regarding the amounts and validity of the liens, as well as multiple litigation matters pending in Los Angeles, San Bernardino and Riverside Superior Court. Further this land has been the subject of development for a number of years and remains vacant and unentitled land.

Further, the Debtor's Plan of Reorganization will call for liquidation of the Subject Property and the net funds utilized to fund the Plan, thus, this sale furthers the Debtor's reorganization.

The second test is whether the sale is in the best interests of the creditors. This test requires the court to balance the interests of all parties to the case in determining whether to approve the sale. Here, the Debtor has selected an offer which has a high probability of closing within a reasonable time, approximately thirty (30) days after approval by this court. The sale is non-contingent and will yield sufficient funds to pay all secured creditors in full and leave sufficient funds to pay all administrative, priority, non-inside unsecured claims of the estate, and a substantial amount for the self-subordinated unsecured claims of an insider, International Capital.

The Motion seeks a finding that the buyer is a good faith purchaser and entitled to the protections of 11 U.S.C. 363(m). For these reasons, the Debtor submits that the sale should be approved by the Court as prayed for and find under Section 363(m) that the buyer hereunder is a good faith buyer.

Dated: November 10, 2022          The Law Offices of Stephen R. Wade

                                  By: _____
                                      Stephen R. Wade

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
405 N. Indian Hill Blvd, Claremont, California 91711

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion*)
ORDER APPROVING THE SALE OF ASSETS OF THE ESTATE (11 U.S.C. 363(b) and (m); ORDER WAIVING THE
THE 14 DAY STAYS OF FRBP 6004(H) and 6004(D); MEMORANDUM OF POINTS AND AUTHORITIES
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
11/10/2022  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 11/10/2022  , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

The Hon.Vincent P. Zurzolo
U.S. Bankruptcy Court - Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012

⊠ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/10/2022 | Kathy R. Chevalier | *(signature)* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Menachem Land, LLC**
**Case No. 2:22-BK-14634-VZ**
**Service List**

Julia M. Wei
Susan B. Luce
DIEMER & WEI, LLP
55 S. Market St
Suite 1420
San Jose, CA 95113
Email: jwei@diemerwei.com
Email: sluce@diemerwei.com

Leodis C. Matthews, Esq,
4322 Wilshire Blvd
Suite 200
Los Angeles, California 90010

Linkage Financial Group, Inc.
12368 E. Valley Blvd
Suite 117
El Monte, California 91732

Linkage Financial Group, Inc.
5446 Thornwood Drive
2nd Floor
San Jose, California 95123

Treasurer Tax Collection Riverside
P.O. Box 12005
Riverside, California 92502

Zhong Lun Law Firm
4322 Wilshire Blvd
Suite 200
Los Angeles, California 90010

Kelly L Morrison
Office of the US Trustee
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017
Email: kelly.l.morrison@usdoj.gov

**Menachem Land, LLC**
**Case No. 2:22-BK-14634-VZ**
**Service List**

The Honorable Vincent P. Zurzolo
Roybal Federal Building
255 E. Temple Street
Courtroom 1368
Los Angeles, California 90012